IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

RECEIVED
12 DEC -5 AM 11: 52
CLERK, U.S. DIST. COURT
ST. PAUL, MN

| | |
|---|---|
| National Parks Conservation Association, )<br>Minnesota Center for Environmental Advocacy, )<br>Friends of the Boundary Waters, Voyageurs )<br>National Park Association, Fresh Energy, )<br>and Sierra Club, )<br>        )<br>Plaintiffs, )<br>        )<br>v. )<br>        )<br>United States Environmental Protection Agency )<br>And Lisa P. Jackson, in her official capacity as )<br>EPA Administrator )<br>        )<br>Defendants. )<br>_____ ) | Civil Action No. |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.        Over three years ago, on October 21, 2009, the Department of Interior

formally certified to the Environmental Protection Agency ("EPA") that air pollutant

emissions from Xcel Energy's coal-fired Sherburne County Generating Station ("Sherco")

were reasonably attributable to visibility impairment in Minnesota's Voyageurs National

Park, and Michigan's Isle Royale National Park.  **Exhibit A.**  The Department of Interior's

certification triggered a mandatory, non-discretionary duty on behalf of EPA to promulgate

modern pollution control limits (known as "RAVI BART," reasonably attributable visibility

impairment best available retrofit technology) for Sherco to remedy such impairment.

Because EPA has failed to promulgate RAVI BART for Sherco without unreasonable delay,

Plaintiffs bring this action to secure an order from the Court that directs EPA to issue RAVI

BART for Sherco.

2.        This action is brought pursuant to the citizen suit provision of the Clean Air Act, Section 304(a), 42 U.S.C. §7604(a), to obtain an order compelling EPA to perform its nondiscretionary duty, by a date certain, to promulgate RAVI BART for Sherco. EPA's failure to perform this duty within a reasonable time has deprived Plaintiffs' members of health, welfare, and procedural protections provided by the Clean Air Act.

### JURISDICTION AND VENUE

3.        The instant action arises under the Clean Air Act ("CAA" or "the Act"), 42 U.S.C. §7401 *et seq.* This Court has jurisdiction over this action pursuant to 42 U.S.C. §7604 and 28 U.S.C. §§1331 and 1361. The relief requested herein is authorized pursuant to 42 U.S.C. §7604 and 28 U.S.C. §§2201, 2202, and 1361.

4.        In accordance with 42 U.S.C. §7604(a) and 40 C.F.R. Part 54, Plaintiffs notified the Administrator of EPA of the violations alleged herein and Plaintiffs' intent to initiate the present action. This notice was provided via certified mail, posted May 9, 2012, and addressed to the EPA Administrator. **Exhibit B**. Copies of Plaintiffs' notice were served on the EPA Regional Administrator for Region 5 in Chicago, the Secretary of the Interior, the state of Minnesota, and on Xcel Energy, the owner of Sherco.

5.        More than 180 days have passed since Plaintiffs' notice was served pursuant to 42 U.S.C. §7604(a). EPA never contacted Plaintiffs regarding their May 9, 2012 notice letter, and EPA never issued any proposed or final RAVI BART determination for Sherco.

6.        Venue is proper in this Court pursuant to 42 U.S.C. §7604(a) that states "[t]he district courts of the United States shall have jurisdiction to compel... agency action unreasonably delayed, except that an action to compel agency action referred to in section 7607(b) which is unreasonably delayed may only be filed in a United States District Court

within the circuit in which such action would be reviewable under section 7607(b)."

Pursuant to Section 7607(b)(1),

> "any… final action of the Administrator under this chapter… which is locally or
> regionally applicable may be filed only in the… the appropriate circuit [….]."

7.    A final action by EPA promulgating RAVI BART for Sherco would be locally or

regionally applicable and thus would be reviewable in the Eighth Circuit Court of Appeals.

The United States District Court of the District of Minnesota is within the Eighth Circuit

Court of Appeals. Therefore venue is appropriate in this Court. 42 U.S.C. §§ 7604(a) and

7607(b)(1).

## PARTIES

8.    Plaintiff National Parks Conservation Association ("NPCA") is a national not-

for-profit corporation headquartered in Washington, D.C., with over 325,000 members

nationwide. NPCA's mission is to protect and enhance America's national parks for the use

and enjoyment of present and future generations. Since NPCA was established in 1919, it has

advocated for protection of the natural environment (including air quality) in and around

the national parks, educated decision makers and the public about the importance of

preserving the parks, worked to convince officials in the Executive Branch and members of

Congress to uphold the laws that protect the public's use and enjoyment of the parks and to

support new legislation to address threats to the parks, litigated to uphold these laws, and

assessed the health of the parks and adequacy of park management to better inform the

public and advocate for parks.

9.    Plaintiff Minnesota Center for Environmental Advocacy ("MCEA") is a

Minnesota non-profit organization with statewide membership whose mission is to use

law, science, and research to preserve and protect the State's natural resources, water and

air quality, wildlife, and the health of its people. MCEA was established in 1974 and is located in St. Paul. It routinely advocates on behalf of its members in administrative, legislative, and judicial forums.

10.     Plaintiff Friends of the Boundary Waters Wilderness is a nonprofit corporation with approximately 2,400 members. The Friends' mission is to protect, preserve, and restore the wilderness character of the Boundary Waters Canoe Area Wilderness and the Quetico-Superior Ecosystem. The organization was founded in 1976 and is located in Minneapolis.

11.     Plaintiff Fresh Energy is a Minnesota non-profit organization founded in 1990 to ensure a safer, healthier environment by promoting a clean, efficient, and fair energy system.   Its efforts focus on global warming solutions, clean energy, and alleviating the impact caused by pollution emitted from Minnesota's fleet of coal-fired power plants. Fresh Energy's members live throughout Minnesota and its offices are located in St. Paul.

12.     Voyagers National Park Association (VNPA) is a nonprofit organization whose mission is to protect and promote the natural, recreational and historic resources of Voyagers National Park. VNPA works to ensure that people can enjoy the scenic, educational, scientific, and recreational treasures of the Park and that the Park's resources are preserved for future generations. VNPA has statewide membership and its office is located in Minneapolis.

13.     Plaintiff Sierra Club is a not-for-profit corporation organized and existing under the laws of California, with its principal place of business located in San Francisco, California. Sierra Club is a national membership organization with more than 600,000 members residing throughout the United States.   Sierra Club has at least 13,392 members in Minnesota.   Sierra

Club's mission is to protect and enhance the quality of the natural and human environment. Its activities include public education, advocacy, and litigation to enforce environmental laws. Sierra Club and its members are greatly concerned about the effects of air pollution on human health and the environment, including the Class I areas in Minnesota, and have a long history of involvement in activities related to air quality.

14.     Plaintiffs' members use and enjoy Voyageurs and Isle Royale National Parks for recreation, spiritual, cultural and aesthetic enjoyment, including enjoyment of the scenic vistas. Plaintiffs' members' use and enjoyment of these areas is adversely affected by the visibility impairment caused by Sherco.

15.     EPA's failure to act complained of herein causes injury to Plaintiffs and their members by delaying the submission, review, promulgation, implementation and enforcement of pollution controls at Sherco required by the Act to remedy and protect against visibility impairment adversely affecting use and enjoyment of Class I areas by Plaintiffs' members. EPA's failure causes injury to Plaintiffs' members by prolonging existing, and allowing future, visibility impairment that significantly interferes with Plaintiffs' members' use and enjoyment of Class I areas, and by nullifying or delaying measures mandated by the Act to remedy and prevent such visibility impairment. EPA's failure also deprives Plaintiffs of the ancillary health and welfare benefits of cleaner air and enhanced visibility throughout the region. The recreational, aesthetic, health and environmental interests of Plaintiffs' members have been and continue to be adversely affected by EPA's failure as alleged herein.

16.     EPA's failure as alleged herein further deprives Plaintiffs and their members of procedural rights and protections to which they would otherwise be entitled, including, but

not limited to, the right to comment on and judicially challenge the adequacy of pollution controls for Sherco.

17.    For all the foregoing reasons, the failures complained of herein cause Plaintiffs and their members injuries for which they have no adequate remedy at law. Granting the requested relief would redress these injuries.

18.    Defendant Lisa P. Jackson is the Administrator of the United States Environmental Protection Agency and is charged with the task of taking various actions to implement and enforce the Clean Air Act, including those actions sought herein.  Defendant Jackson is sued in her official capacity.

19.    Defendant United States Environmental Protection Agency is the federal agency charged with implementation of the Clean Air Act.

## FACTUAL AND REGULATORY BACKGROUND

20.    In 1977, Congress declared as a national goal "the prevention of any future, and the remedying of any existing, impairment of visibility in mandatory Class I Federal areas which impairment results from manmade air pollution." 42 U.S.C. §7491.  These mandatory Class I Federal areas ("Class I areas") include 156 national parks and wilderness areas for which the Secretary of Interior determined visibility is an important value.

21.    Congress directed EPA to promulgate regulations requiring states to make progress toward attaining the national goal, including requiring amended State Implementation Plans (SIPs) with emissions limits on certain sources of air pollutants that cause or contribute to visibility impairments in Class I areas.  42 U.S.C. §7491(b).

22.    EPA issued its regulations in two phases.  Phase 1 of the haze regulations focused on BART to address "reasonably attributable visibility impairments" – RAVI - that

could be traced to a single source or small group of sources. 45 Fed. Reg. 80084 (December 2, 1980). Phase 2 of the haze regulations focused on BART to address "regional haze" resulting from many dispersed sources. 64 Fed. Reg. 35,714 (July 1, 1999). This case arises under the RAVI Phase 1 regulations.

23.     The CAA provides that if the states fail to act to address visibility impairments, EPA has the authority and duty to impose the required emission reductions through Federal Implementation Plans (FIPs). 42 U.S.C. §7491(b).

24.     Minnesota failed to amend its SIP in response to EPA's 1980 RAVI rule. As a result, in 1987 EPA disapproved Minnesota's SIP. 53 Fed. Reg. 45132, 45133 (November 24, 1987). Therefore the RAVI portion of Minnesota's haze program is administered directly by EPA through a FIP for Minnesota.

25.     EPA's RAVI rules provide that "[t]he affected Federal Land Manager may certify to the State, at any time, that there exists reasonably attributable impairment of visibility in any mandatory Class I Federal area." 40 C.F.R. §51.302(c)(1). RAVI is defined as "visibility impairment that is caused by the emission of air pollutants from one or a small number of sources." 40 C.F.R. §51.301. The term "visibility impairment" is defined as "any humanly perceptible change in visibility (light extinction, visual range, contrast, coloration) from that which would have existed under natural conditions." *Id.*

26.     Visibility impairment is measured in deciviews. A 1.0 deciview reduction in visibility is perceptible to the human eye. According to EPA's 1999 regional haze regulations, "[a] single source that is responsible for a 1.0 deciview change or more should be considered to "cause" visibility impairment." 40 C.F.R. Part 51, Appendix Y—Guidelines for BART Determinations under the Regional Haze Rule, Section III A. 1.

27.      Once a federal land manager certifies that a source of air pollution is causing reasonably attributable visibility impairment in a mandatory Class I area, EPA has a mandatory duty to establish RAVI BART for that source.  Accordingly, EPA "must identify and analyze for BART any existing stationary facility that has been certified by the Federal Land Manager as causing reasonably attributable visibility impairment." 40 C.F.R. §51.300(b)(2), 40 C.F.R. §51.302(c)(4), 52 Fed. Reg. 45132, 45133 (November 24, 1987).

28.      Voyageurs and Isle Royale National Parks are mandatory Class I areas. 40 C.F.R. pt. 81, subpt. D.

29.      On October 21, 2009, the Department of Interior formally certified to EPA that air pollutant emissions from Sherco were reasonably attributable to visibility impairment in Voyageurs and Isle Royale National Parks.  **Exhibit A.**

30.      According to the Department of Interior's October 21, 2009 certification, "because the Environmental Protection Agency (EPA) currently administers the 1980 Visibility Protection Rules for the State of Minnesota through a Federal Implementation Plan, any such visibility impairment certification should be directed to the EPA, not the MPCA [Minnesota Pollution Control Agency]." **Id.**, p.1.

31.      The Department of Interior's certification noted that Xcel Energy's modeling showed that Sherco emissions cause a maximum visibility impact to Voyagers National Park of 2.34 dv, and cause a maximum visibility impact to Isle Royale National Park of 1.79 dv.

32.      Although it has not issued a RAVI BART determination for Sherco, EPA approved Minnesota's final regional haze State Implementation Plan for electric generating units, including Sherco on June 12, 2012. 77 Fed. Reg. 34801, 34806 (June 12, 2012).  The

regional haze SIP relied on pollutant emission reductions expected under the Cross-State Air Pollution Rule and included additional limits for Sherco. EPA stated in its final approval that it had not evaluated whether the additional limits for Sherco "represent BART on a source-specific basis" and instead viewed them as an "enhancement" to make the Minnesota regional haze plan "more stringent." *Id.*

33.     In its regional haze approval EPA stated, "EPA . . . intends to conduct further rulemaking regarding RAVI BART for Sherco within the next few months." *Id.*

34.     To further remedy the reasonably attributable visibility impairment caused by Sherco in Voyageurs and Isle Royale National Parks, EPA is required to determine, and to ensure the implementation of RAVI BART for Sherco.

35.     The installation and operation of RAVI BART at Sherco has the potential to further remedy existing visibility impairment in Voyageurs and Isle Royale National Parks.

36.     In its final regional haze approval, EPA acknowledged that its Chief of the Control Strategies Section in EPA Region 5 submitted a letter on June 6, 2011, stating "to the extent that source-specific BART is required, the available evidence suggests that source-specific BART for this facility would include installation and operation of SCR [selective catalytic reduction] of $NO_x$ emissions." 77 Fed. Reg. at 34806.

37.     Minnesota's final regional haze enhancement for Sherco did not require the installation of selective catalytic reduction to reduce nitrogen oxide emissions.

38.     The Department of Interior's certification triggered a mandatory duty on behalf of EPA to require Xcel Energy to install RAVI BART at Sherco to resolve its visibility impacts.

39.     Because EPA has failed to promulgate RAVI BART at Sherco for over three years since the Department of Interior's certification, EPA has failed to perform its mandatory duty without unreasonable delay.

## FIRST CLAIM FOR RELIEF
### Failure to Promulgate final RAVI BART determination for Sherco

40.     Plaintiffs hereby incorporate all previous paragraphs by reference.

41.     The citizen suit provision of the Clean Air Act, Section 304(b)(2), 42 U.S.C. §7604(b)(2), provides that citizens may commence a civil action against the Administrator of EPA "where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator."

42.     Furthermore, "the District Courts of the United States shall have jurisdiction to compel (consistent with paragraph (2) of this subsection) agency action unreasonably delayed."

43.     On October 21, 2009, the Department of Interior formally certified to EPA that air pollutant emissions from Sherco were reasonably attributable to visibility impairment in Voyageurs and Isle Royale National Parks. **Exhibit A.**

44.     Pursuant to 40 C.F.R. §51.300(b)(2), 40 C.F.R. §51.302(c)(4), 52 Fed.Reg. 45132, 45133 (November 24, 1987), EPA "must identify and analyze for BART" any existing stationary facility in Minnesota that has been certified by the Federal Land Manager as causing reasonably attributable visibility impairment to any federal Class I area.

45.     Because EPA has failed to promulgate a federal RAVI BART determination for Sherco for more than three years, it has failed to meet its mandatory duty to establish RAVI BART for Sherco without unreasonable delay.

46.     EPA's failure to promulgate a final RAVI BART determination for Sherco constitutes a failure to perform acts or duties that are not discretionary with the Administrator within the meaning of 42 U.S.C. §7604(a)(2).  Such failure is ongoing and, on information and belief, will continue absent the relief sought herein.

47.     Accordingly, Plaintiffs are entitled to an order from this Court directing EPA to promulgate a final and complete RAVI BART determination for Sherco by a date certain.

## RELIEF REQUESTED

48.     WHEREFORE, Plaintiffs pray that this Court:

(1)  Declare that EPA's failures to promulgate a final RAVI BART determination for Sherco as complained of herein constitutes a failure to perform a nondiscretionary duty without unreasonable delay within the meaning of Clean Air Act Section 304(b)(2), 42 U.S.C. §7604(b)(2);

(2) Preliminarily and permanently enjoin the Administrator from continuing to violate the above-described nondiscretionary duties;

(3) Order the Administrator to issue a final RAVI BART determination for Sherco by a date certain;

(4) Award Plaintiffs their reasonable costs of litigation, including attorneys' fees, pursuant to 42 U.S.C. §7604(d);

(5) Retain jurisdiction over this action to ensure compliance with the Court's orders; and

(6) Grant such other relief as the Court deems just and proper.

DATED: this 5th day of December 2012.

Respectfully Submitted,

Reed Zars (WYB# 6-3224)
REED ZARS ATTORNEY AT LAW
910 Kearney Street
Laramie, WY 82070
(307) 745-7979
reedzars@gmail.com

*Counsel for Plaintiff's National Parks
Conservation Association and Sierra Club*

Kevin Reuther (MNB# 266255)
MINNESOTA CENTER FOR
ENVIRONMENTAL ADVOCACY
26 E. Exchange St., Suite 206
St. Paul, MN. 55101-1667
(651) 287-4861
kreuther@mncenter.org

*Counsel for Plaintiffs Minnesota Center for
Environmental Advocacy, Friends of the
Boundary Waters, Voyagers National Park
Association, and Fresh Energy*